S94A1532. BOWERS et al. v. SHELTON et al.
(453 SE2d 741)

THOMPSON, Justice.

Acting on information from an unidentified source, the Georgia Department of Revenue conducted a civil audit regarding the Georgia income tax liability of appellee Robert Shelton and the sufficiency of certain Georgia tax returns filed by his wife, appellee Judy Shelton. The matter was then referred by the Revenue Department to the Department of Law of the State of Georgia, for criminal investigation and possible prosecution for violations of Georgia's revenue laws.[1] Mr. Shelton was subsequently charged under OCGA § 48-7-2, with two misdemeanor counts of unlawful failure to pay State income tax for tax years 1991 and 1992. He pled nolo contendere to the accusation and was sentenced under the First Offender Act, OCGA § 42-8-60 et seq.[2] The State agreed that it would not prosecute Mrs. Shelton for any alleged tax offenses occurring in 1992 or earlier.

The criminal plea was announced in a press release by the Revenue Department and Commissioner Collins. Mr. Shelton was at the time Chairman of Delta Air Lines' Master Executive Council, which comprises part of the Air Line Pilot's Association. Numerous requests were subsequently received by the Law Department under the Georgia Act relating to the inspection of public records (known commonly

---

[1] This was done pursuant to the authority of OCGA §§ 45-15-10 and 45-15-17.

[2] In compliance with the plea, Mr. Shelton paid $46,700 to the Department of Revenue in taxes, interest, penalties and restitution, and a fine of $1,000. The fines and surcharges were paid on the same day the plea was accepted, and no adjudication of guilt was entered.

as the Open Records Act), OCGA § 50-18-70 et seq., for access to the Shelton criminal investigative file held in the office of the Attorney General.

The Sheltons filed a complaint for injunctive relief and obtained an order of the Superior Court of Fulton County, enjoining appellants, Attorney General Bowers and Revenue Commissioner Collins, from publicly disclosing any information in the investigative file, and ordering the record sealed until further order of the court. Following a hearing, an order was entered permanently enjoining the disclosure of any information in the investigative file, on the bases that the State's file contains confidential tax information which is not required to be disclosed under the Open Records Act; there was no legitimate public interest in disclosure and; the disclosure would violate appellees' right to privacy.[3] It is from the permanent injunction that this appeal is taken.

1. As a threshold issue, appellants assert that the Open Records Act provides no jurisdictional basis upon which to enjoin the disclosure of public records. Their argument is predicated on the ruling in *Chrysler Corp. v. Brown*, 441 U. S. 281 (99 SC 1705, 60 LE2d 208) (1979), decided under the Freedom of Information Act (FOIA), and disallowing what was denominated as a "reverse-FOIA" action. The Court held that FOIA is purely a disclosure statute which affords no private right of action to enjoin agency disclosure. The basis for the ruling was the determination that Congress did not limit an agency's discretion to disclose information when it enacted the FOIA, since the Act imposes no affirmative duties on an agency to withhold information sought. Its provisions exempting specified information from disclosure[4] were meant only to permit the governmental agency to withhold certain information, and were not meant to mandate nondisclosure.

The Georgia Act relating to the inspection of public records, OCGA § 50-18-70 et seq., requires disclosure of public records, with certain exceptions enumerated at OCGA § 50-18-72 (a). While the enumerated exceptions are similar to those contained in the FOIA, this Court has determined that the Georgia Act *mandates the nondisclosure* of certain excepted information. *Harris v. Cox Enterprises*, 256 Ga. 299 (348 SE2d 448) (1986). The statute grants jurisdiction to the Georgia Superior Courts under OCGA § 50-18-73 (a), "to entertain actions against persons or agencies having custody of records

---

[3] Those portions of the court record which contain confidential information from the investigative file were to remain under seal, while other portions were ordered unsealed. The court made the requisite finding of harm under USCR 21 with respect to the sealed part of the record.

[4] Specifically, 5 USC § 552 (b).

open to the public . . . to enforce compliance" with the Act's provisions, and the court is vested with discretion in determining whether to allow or prohibit inspection. *Harris*, supra. OCGA § 50-18-70 (b) allows for inspection of all public records of an agency, "except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to public inspection." Because the Georgia Act materially differs from the FOIA, *Chrysler Corp.* is inapplicable. Accordingly, the Sheltons have a cause of action to enforce compliance with the Act, by seeking to enjoin disclosure of legally protected information.

2. The dispositive question is whether the Shelton investigative file contains public documents which are subject to inspection and disclosure under the Open Records Act.[5] We hold that it does not, and affirm the grant of injunctive relief.

The Act allows any citizen of this state to inspect public records of an agency,[6] except those which by court order or by law are prohibited or specifically exempted from public inspection. OCGA § 50-18-70 (b).

> In suits under the Open Records Act, the first inquiry is whether the records are "public records." [Cit.] If they are public records, the second inquiry is whether they are protected from public disclosure pursuant to OCGA §§ 50-18-70 or 50-18-72. [Cit.] If they are not exempt under the list of exemptions found in § 50-18-72 or under any other statute, then the question is whether they should be protected by court order under § 50-18-70, [cit.], but only if there is a claim that disclosure of the public records would invade individual privacy. [Cits.]

*Hardaway Co. v. Rives*, 262 Ga. 631, 632 (1) (422 SE2d 854) (1992).

---

[5] The investigative file was submitted by appellants to the trial court for review. It consists of several boxes of material, which the court categorized into four groups: (1) documents obtained by the Office of the Attorney General using subpoenas issued in the criminal tax investigation, namely, banking records, mortgage documents, insurance information, employment records, children school records, telephone, cleaning and cable company records, and car dealership records; (2) memoranda of interviews of the Sheltons' ex-spouses, neighbors, personal friends, union members, fellow employees, housekeeper, and business vendors, conducted by agents of the Attorney General and Revenue Commissioner during their criminal tax investigation; (3) memoranda and notes of agents of the Attorney General and Revenue Commissioner regarding meetings and negotiations with the Sheltons' counsel; and (4) documents submitted by the Sheltons' counsel in meetings and negotiations which led to the plea agreement. The court found no reason why these personal documents are of interest to the general public. Any federal tax returns which had been provided to the State by the Internal Revenue Service have since been returned to that agency and are no longer contained in the investigative file.

[6] The term "agency" is defined in OCGA § 50-18-70 (a).

Even assuming arguendo that the investigative file is a "public record," within the contemplation of the Act,[7] the personal financial documents contained therein are clearly protected from public disclosure.

The Act specifically provides that "[t]his article shall not be construed to repeal: . . . [s]tate laws making certain tax matters confidential." OCGA § 50-18-72 (e) (3). The relevant state law relating to confidentiality of tax information is OCGA § 48-7-60 (a). It not only mandates confidentiality with respect to "the amount of income or any particulars set forth or disclosed in any report or return required under the law of this state or any return or return information[8] required by the Internal Revenue Code when the information or return is . . . submitted by the taxpayer as provided by the laws of this state," but makes it *unlawful* for the tax commissioner to divulge in any manner the amount of income or any particulars set forth in any report or return required by law to be submitted to the Georgia Department of Revenue.[9]

The Act requiring the inspection of public records has in no manner abrogated the mandate of OCGA § 48-7-60 (a) that tax information be maintained inviolate. OCGA § 50-18-72 (e) (3).

---

[7] Public records are defined by OCGA § 50-18-70 (a) as:

all documents, papers, letters, . . . or similar material prepared and maintained or received in the course of the operation of a public office or agency . . . [or] such items received or maintained by a private person or entity on behalf of a public office or agency *which are not otherwise subject to protection from disclosure* . . . .

(Emphasis supplied.) Generally, records of criminal prosecutions fall within the provisions of the Act allowing for inspection by the general public, if the criminal investigation has been completed. *Harris v. Cox Enterprises*, supra.

[8] The parties are in agreement that the term "State return information" is not defined in the Georgia Code. We have no hesitation in adopting the definition as set forth in the Agreement of Coordination of Tax Administration, entered into between the Internal Revenue Service, the State of Georgia and the Georgia Department of Revenue on December 29, 1981, and which was made part of the record before the trial court. It provides:

The term "State Return Information" means a taxpayer's identity, the nature, source, or amount of his/her income, payment, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's State return was, is being, or will be examined or subject to other investigation or processing, or any other data received by, recorded by, prepared by, furnished to, or collected by the Agency with respect to a State return or with respect to the determination of the existence or possible existence, or liability (or the amount thereof) of any person under the internal revenue laws, or related statutes, of the State, for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

Section 2.10.

[9] The confidentiality of tax returns or return information is not absolute. Under OCGA § 48-7-60 (a) and (b), exemptions are provided for information provided to the Attorney General, the Internal Revenue Service, or the proper officer of other states, for inspection or as evidence in the event of an action involving the tax liability of the taxpayer. In addition, tax returns or return information may be available for public inspection where the documents are contained in a court record, which is not otherwise under seal.

While this state has a strong policy of open government, there is a corresponding policy for protecting the right of the individual to personal privacy. References to matters about which the public has, in fact and in law, no legitimate concern, though found in a public document are not subject to disclosure under the Public Records Act because they are not the subject of "legitimate public inquiry."

*Harris,* supra at 302.

The trial court properly determined that the information contained in the Shelton investigative file consisted of confidential tax information which is not subject to disclosure under the Act allowing for the inspection of public records. OCGA § 50-18-70 et seq.

3. Appellants' remaining enumerations of error establish no ground for reversal.

*Judgment affirmed. All the Justices concur, except Hunstein and Carley, JJ., who dissent.*

DECIDED MARCH 6, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995.

*Michael J. Bowers, Attorney General, Daniel M. Formby, Senior Assistant Attorney General, Barbara E. Nelan, Assistant Attorney General,* for appellants.

*Chilivis & Grindler, Nickolas P. Chilivis, Thomas D. Bever,* for appellees.