**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 4, 2017**

# In the Court of Appeals of Georgia

A17A0620. CONSUMER CREDIT RESEARCH FOUNDATION v.
  BOARD OF REGENTS OF THE UNIVERSITY SYSTEM
  OF GEORGIA et al.

BARNES, Presiding Judge.

At issue in this appeal is whether state agencies have the discretion to release materials related to academic research in response to a request made under the Georgia Open Records Act, even if the Act specifically exempts the materials from disclosure to the public and a private party has sued to enjoin their release. The trial court concluded that state agencies have such discretionary authority, leading the court to grant summary judgment to the Board of Regents of the University System of Georgia and the Campaign for Accountability (collectively, the "University Defendants") and to deny summary judgment to the Consumer Credit Research Foundation (the "Foundation"). However, in *Bowers v. Shelton*, 265 Ga. 247, 248-249 (1) (453 SE2d 741) (1995), the Supreme Court of Georgia held that a state agency's compliance with the specific exceptions to disclosure contained in the Open

Records Act is mandatory rather than discretionary, and that private parties may sue to enjoin an agency from releasing records that fall within one of those exceptions. Based on the *Bowers* decision, the trial court erred in holding that a state agency's compliance with the specific exceptions to disclosure for materials related to academic research was discretionary. Accordingly, because the trial court relied on an erroneous legal theory, we vacate the trial court's summary judgment order and remand for further proceedings consistent with this opinion.

The relevant facts are undisputed. In November 2013, the Foundation entered into a consulting agreement with the Kennesaw State University Research and Service Foundation. In accordance with the agreement, a Kennesaw State University ("KSU") professor conducted statistical research and analysis relating to "payday" loans, which the professor incorporated into a paper that was published in 2014.

In June 2015, the Campaign for Accountability ("CFA") sent a request to KSU under the Georgia Open Records Act, OCGA § 50-18-70 et seq., for copies of certain correspondence, including e-mails and other communications between the KSU professor and the Foundation relating to the professor's payday-loan research (the "research correspondence"). KSU informed the CFA that it did not oppose the release of the research correspondence in redacted form and notified the Foundation that it

planned to release the redacted correspondence to the CFA in response to the open records request.

The Foundation objected to KSU releasing the research correspondence to the CFA. Because KSU is part of the University System of Georgia, the Foundation filed the instant action for declaratory and injunctive relief against the Board of Regents in the Superior Court of Fulton County to prevent the release of the research correspondence under the Open Records Act. The trial court granted the CFA's motion to intervene in the action as a party defendant.

The parties filed cross-motions for summary judgment regarding the release of the research correspondence. The Foundation emphasized that the Open Records Act contains a list of specific exceptions to public disclosure in OCGA § 50-18-72 (a) and argued that the research correspondence was specifically exempt from disclosure under two of those exceptions for academic research-related materials, OCGA § 50-18-72 (a) (35) and (36) (the "research exceptions").[1] The Foundation further argued

---

[1] The two research exceptions provide in relevant part:
(a) Public disclosure shall not be required for records that are:
. . . .
(35) Data, records, or information of a proprietary nature produced or collected by or for faculty or staff of state institutions of higher learning, or other governmental agencies, in the conduct of, or as a result of, study or research on commercial, scientific, technical, or scholarly issues,

3

that because the research exceptions to disclosure applied, KSU was prohibited from releasing the research correspondence to the CFA.

The University Defendants responded that the Foundation had failed to prove that the research correspondence fell within either of the two research exceptions found in the Open Records Act. The University Defendants further responded that even if the research correspondence fell within the two research exceptions, those exceptions simply permitted, but did not require, KSU to withhold the correspondence from disclosure. Consequently, the University Defendants argued,

whether sponsored by the institution alone or in conjunction with a governmental body or private concern, where such data, records, or information has not been publicly released, published, copyrighted, or patented;

(36) Any data, records, or information developed, collected, or received by or on behalf of faculty, staff, employees, or students of an institution of higher education or any public or private entity supporting or participating in the activities of an institution of higher education in the conduct of, or as a result of, study or research on medical, scientific, technical, scholarly, or artistic issues, whether sponsored by the institution alone or in conjunction with a governmental body or private entity, until such information is published, patented, otherwise publicly disseminated, or released to an agency whereupon the request must be made to the agency. This paragraph shall apply to, but shall not be limited to, information provided by participants in research, research notes and data, discoveries, research projects, methodologies, protocols, and creative works . . . .

OCGA § 50-18-72 (a) (35), (36).

4

KSU had the discretionary authority to release the research correspondence to the CFA even if the research exceptions found in OCGA § 50-18-72 (a) (35) and (36) applied.

In response to the cross-motions for summary judgment, the trial court granted summary judgment to the University Defendants and denied it to the Foundation. The trial court ruled that the two research exceptions in the Open Records Act authorized a state agency to withhold research materials covered by the exceptions from public disclosure, but that the Act did not mandate nondisclosure. Based on its conclusion that the research exceptions did not place a mandatory duty on state agencies to withhold research materials covered by the exceptions from public disclosure, the trial court ruled that KSU had the discretion to release the research correspondence in response to the Open Records Act request made by the CFA, even assuming that the correspondence fell within one or both of the research exceptions. The trial court ultimately did not resolve whether any of the research correspondence fell within the two research exceptions contained in the Open Records Act. The Foundation now appeals the trial court's summary judgment order.

Our review of a trial court's statutory interpretation is de novo, *Kennedy Dev. Co. v. Camp*, 290 Ga. 257, 258 (719 SE2d 442) (2011), and we begin our review with

a summary of the applicable statutory framework. The Georgia Open Records Act authorizes the personal inspection and copying of public records, "except those which by order of a court of this state or by law are specifically exempted from disclosure." OCGA § 50-18-71 (a). As previously noted, several specific exceptions to disclosure are listed in OCGA § 50-18-72 (a) of the Act, including the two research exceptions found in OCGA § 50-18-72 (a) (35) and (36).

"Because public policy strongly favors open government, any purported statutory exemption from disclosure under the Open Records Act must be narrowly construed." (Punctuation, footnote, and emphasis omitted.) *City of Atlanta v. Corey Entertainment*, 278 Ga. 474, 476 (1) (604 SE2d 140) (2004). See OCGA § 50-18-70 (a). "However, although exemptions from disclosure under the Open Records Act are narrowly construed, the Act obviously should not be construed in derogation of its express terms." (Citation and punctuation omitted.) *Evans v. Ga. Bureau of Investigation*, 297 Ga. 318, 319 (773 SE2d 725) (2015). "[E]ven when documents are found to be public records, and therefore open for inspection by the public, there may be some material contained therein which for competing public policy reasons are not subject to disclosure." *Harris v. Cox Enterprises*, 256 Ga. 299, 300 (348 SE2d 448) (1986) (per curiam) (on motion for reconsideration),

6

The Open Records Act also authorizes actions to enforce its provisions. Specifically, the Act grants legal and equitable jurisdiction to the superior courts of this state "to entertain actions against persons or agencies having custody of records open to the public under [the Open Records Act] to enforce compliance with the provisions of [the Act]." OCGA § 50-18-73 (a). Enforcement actions "may be brought by any person, firm, corporation, or other entity." Id. And while the Open Records Act does not authorize an award of compensatory or punitive damages to a party bringing a civil enforcement action, *McBride v. Wetherington*, 199 Ga. App. 7, 8 (403 SE2d 873) (1991), a court can sanction state agencies that negligently violate the Act with civil penalties and award attorney fees under certain circumstances. OCGA §§ 50-18-73 (b); 50-18-74 (a).

Mindful of this statutory framework, we turn to the specific arguments raised here. On appeal, the Foundation argues that the trial court erred in ruling that KSU had the discretion to release the research correspondence to the CFA, even if the correspondence was specifically exempt from disclosure under the research exceptions found in OCGA § 50-18-72 (a) (35) and (36) of the Open Records Act. According to the Foundation, the trial court's ruling is inconsistent with the reasoning

and analysis of the Georgia Supreme Court in *Bowers v. Shelton*, 265 Ga. 247, 248-249 (1) (453 SE2d 741) (1995). We agree.

In *Bowers*, the Supreme Court addressed the question whether a private party can bring suit to enjoin the disclosure of public records under the Open Records Act. 265 Ga. at 248-249 (1). In addressing this question, the Supreme Court compared the Georgia Open Records Act to the federal Freedom of Information Act, 5 USC § 552 et seq. ("FOIA"). *Bowers*, 265 Ga. at 248-249 (1). The Supreme Court noted that the FOIA's "provisions exempting specified information from disclosure [are] meant only to permit the governmental agency to withhold certain information, and [are] not meant to mandate nondisclosure." Id. at 248 (1). See 5 USC § 552 (b); *Chrysler Corp. v. Brown*, 441 U.S. 281, 290-294 (II) (99 SCt 1705, 60 LE2d 208) (1979). Thus, the Georgia Supreme Court pointed out, the FOIA "imposes no affirmative duty on an agency to withhold information sought," even if the information is specifically exempted from disclosure. *Bowers*, 265 Ga. at 248 (1).

The Supreme Court emphasized, however, that the Georgia Open Records Act "materially differs from the FOIA." *Bowers*, 265 Ga. at 249 (1). As the Supreme Court explained,

8

[t]he Georgia Act relating to the inspection of public records, OCGA §
50-18-70 et seq., requires disclosure of public records, with certain
exceptions enumerated at OCGA § 50-18-72 (a). While the enumerated
exceptions are similar to those contained in the FOIA, this Court has
determined that the Georgia Act *mandates the nondisclosure* of certain
excepted information.

(Citation and punctuation omitted; emphasis in original.) Id. at 248 (1).

In concluding that the nondisclosure of statutorily excepted information is mandatory rather than discretionary under the Georgia Open Records Act, the Supreme Court in *Bowers* relied in part on its prior decision in *Harris v. Cox Enterprises, Inc.*, 256 Ga. 299 (348 SE2d 448) (1986). *Bowers*, 265 Ga. at 248-249 (1). In *Harris*, the Supreme Court held that the Georgia Open Records Act "requires a custodian of public records to preserve the confidentiality of information that the public does not have a right to see," and that the State could not "by waiver, inadvertent or not, allow exempted information to be made public." (Citation and punctuation omitted.) 256 Ga. at 300.[2] The *Harris* Court reasoned that the State could

---

[2] *Harris*, in turn, relied on the earlier Supreme Court case of *Griffin-Spalding County Hosp. Auth. v. Radio Station WKEU*, 240 Ga. 444, 446 (3) (241 SE2d 196) (1978), where the Court held that "the intent of the General Assembly was to afford to the public at large access to public records with the exceptions of certain information which the [applicable law] exempts from disclosure," and that the law

9

not waive the rights of third parties who had an interest in confidential information that was statutorily exempted from disclosure under the Open Records Act. Id.

In addition to relying on *Harris*, the Supreme Court in *Bowers* also focused on the plain language of the Georgia Open Records Act in concluding that the nondisclosure of statutorily excepted information is mandatory rather than discretionary under the Act. 265 Ga. at 248-249 (1). In this regard, the Supreme Court pointed out that, as noted supra, the Open Records Act grants superior courts jurisdiction over actions brought "to enforce compliance" with the Act's provisions, OCGA § 50-18-73 (a), and the Act allows for the inspection of public records, "*except*" for those which, among other things, are "specifically exempted" by law from being disclosed. (Emphasis supplied.) OCGA § 50-18-71 (a).[3] *Bowers*, 265 Ga. at 248-249 (1). In light of this statutory language and framework, the Supreme Court concluded that the Georgia Open Records Act creates a cause of action for private

"requires a custodian to expunge from the records any information that the public does not have a right to see."

[3] Former OCGA § 50-18-70 (b), in effect at the time of the *Bowers* decision, provided that public records were open for inspection "except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to inspection by the general public." Current OCGA § 50-18-71 (a) provides that public records are open for public inspection "except those which by order of a court of this state or by law are specifically exempted from disclosure."

10

parties "to enjoin disclosure of legally protected information," 265 Ga. at 249 (1), and that injunctive relief is appropriate if the public documents at issue are not "subject to inspection and disclosure under the Open Records Act." Id. at 249 (2).

*Bowers* establishes that when a state agency plans to disclose public records to the public in response to an Open Records Act request, a private party is entitled to bring suit under the Act and enjoin the agency from disclosing the records, if the records are not "subject to inspection and disclosure," i.e., if they fall within a statutory exception listed in OCGA § 50-18-72 (a) or another statute. *Bowers*, 265 Ga. at 248-249 (1), (2). Injunctive relief against the state agency is warranted because, as the Supreme Court later reiterated in *Howard v. Sumter Free Press*, 272 Ga. 521, 522 (1) (531 SE2d 698) (2000), a state agency's "compliance with the Act is not discretionary, but mandatory." See also *Doe v. Bd. of Regents of Univ. System of Ga.*, 215 Ga. App. 684, 692 (4) (452 SE2d 776) (1994) (whole court) ("The Open Records Act requires [the Board of Regents] to preserve the confidentiality of information that the public does not have a right to see.") (citation and punctuation omitted).

"It is axiomatic that this Court is bound by the precedent of the Supreme Court." *Dillard v. Bishop Eddie Long Ministries*, 258 Ga. App. 507, 510 (3) (574 SE2d 544) (2002). Accordingly, in light of the Supreme Court's decision in *Bowers*,

11

the trial court erred in ruling that KSU had the discretion to release the research correspondence in response to CFA's open record request, even if the Foundation brought suit to enjoin the disclosure and demonstrated that the correspondence was exempt from disclosure under OCGA § 50-18-72 (a) (35) or (36). Rather, pursuant to the analysis and reasoning of the *Bowers* decision, the Foundation was entitled to enjoin KSU from disclosing the research correspondence to the CFA, if the Foundation showed that the correspondence fell within one or both of the research exceptions found in the Open Records Act.

Because the trial court erroneously concluded that KSU had the discretion to disclose the research correspondence to CFA, the trial court never addressed the parties' arguments regarding whether or to what extent the correspondence fell within the research exceptions contained in OCGA § 50-18-72 (a) (35) or (36). Consequently, we vacate the trial court's summary judgment order and remand for the trial court to consider in the first instance the parties' arguments regarding the application of one or both of the research exceptions to the correspondence at issue in this case. See *Harris*, 256 Ga. at 302 (2) (remanding case for trial court to consider whether records at issue fell within a statutory exception to disclosure). See generally *Community Renewal v. Nix*, 279 Ga. 840, 842 (2) (621 SE2d 722) (2005) (declining

12

to apply the right-for-any-reason rule, where trial court's summary judgment ruling was based upon an erroneous legal theory and other issues were left unresolved as a result of the trial court's ruling); *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (appellate courts have discretion to vacate a trial court's summary judgment order and remand for the trial court to consider alternative arguments in the first instance).

*Judgment vacated and case remanded with direction. McMillian and Mercier, JJ., concur*.